UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

REINIER FUNDORA-MARTINEZ,

        Petitioner,

v.                                                            Case No. 3:21-cv-1058-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Reinier Fundora-Martinez, an inmate of the Florida penal system, initiated this action on October 18, 2021,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) and a Memorandum of Law and Fact Supporting the Petition (Memorandum; Doc. 2).[2] In the Petition, Fundora-Martinez challenges a 2017 state court (Duval County, Florida) judgment of conviction for knowingly participating in an intentional motor vehicle crash and organized fraud. He raises five grounds for relief. See Petition at 15-37. Respondents submitted a memorandum in opposition to the

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Petition. See Response (Doc. 8). They also submitted exhibits. See Docs. 8-1 through 8-17. Fundora-Martinez filed a brief in reply. See Reply (Doc. 9). This action is ripe for review.

## II. Relevant Procedural History

On November 18, 2016, the State of Florida charged Fundora-Martinez by fourth amended information with knowingly participating in an intentional motor vehicle crash (counts one through seven), false insurance claims (counts eight through fourteen), and organized fraud (count fifteen). Doc. 8-1 at 303-06. Fundora-Martinez proceeded to trial on counts one through four, six through seven, and fifteen. Doc. 8-3 at 9, 41. On July 27, 2017, at the conclusion of the trial, the jury found Fundora-Martinez guilty as charged, and the trial court sentenced him to a fifteen-year term of imprisonment on such counts, to run concurrently.[3] Doc. 8-1 at 339-46, 403-06, 428-31, 455-61, 561.

On direct appeal with the benefit of counsel, Fundora-Martinez filed an initial brief, arguing the trial court had violated double jeopardy by permitting his convictions for knowingly participating in an intentional motor vehicle

_____

[3] Subsequently, Fundora-Martinez pled guilty to count five and the court sentenced him to a two-year term of imprisonment to run concurrent with his fifteen-year sentences. Doc. 8-1 at 376, 432-33, 442, 459-60, 495-504, 572. The State nolle prossed the charges in counts eight through fourteen. Id. at 495, 561.

crash and organized fraud. Doc. 8-4. The State filed an answer brief. Doc. 8-5. Fundora-Martinez filed a reply brief. Doc. 8-6. Florida's First District Court of Appeal (First DCA) per curiam affirmed Fundora-Martinez's convictions and sentences without a written opinion on July 19, 2019, Doc. 8-7, and issued the mandate on October 25, 2019, Doc. 8-10.

On November 9, 2020, Fundora-Martinez filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 8-11 at 5-43. In his Rule 3.850 Motion, Fundora-Martinez alleged counsel was ineffective when, inter alia, he: failed to move for judgment of acquittal on counts one through seven based on a double jeopardy violation (ground one); failed to investigate and call exculpatory witness Alex Garcia at trial (ground three); advised Fundora-Martinez to reject a favorable ten-year probation plea offer (ground four); advised Fundora-Martinez to reject a favorable five-year prison plea offer (ground five); advised Fundora-Martinez not to testify in his own defense at trial (ground six); and committed errors that cumulatively deprived Fundora-Martinez of a fair trial (ground eight). Id. at 19-39. On December 18, 2020, the postconviction court summarily denied relief on all grounds. Id. at 90-102. The First DCA per curiam affirmed the denial of relief

without a written opinion on June 17, 2021, Doc. 8-14, and issued the mandate on August 27, 2021, Doc. 8-17.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Fundora-Martinez's]

4

claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's

5

decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 125-26.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. 12, 18 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. 305, 322 n.8 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable

7

> merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at 18 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016) (internal citations modified). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Titlow</u>, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

9

<u>Richter</u>, 562 U.S. at 104 (internal citations modified). The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at 105. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.

10

> 111, 123 (2009) (quotation marks omitted). If there is
> "any reasonable argument that counsel satisfied
> <u>Strickland</u>'s deferential standard," then a federal
> court may not disturb a state-court decision denying
> the claim. <u>Richter</u>, 562 U.S. at 105.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal

citations modified). In other words, "[i]n addition to the deference to counsel's

performance mandated by <u>Strickland</u>, the AEDPA adds another layer of

deference—this one to a state court's decision—when we are considering

whether to grant federal habeas relief from a state court's decision."

<u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,

"[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.

Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Fundora-Martinez alleges his trial counsel was

ineffective when he failed to move for judgment of acquittal as to counts one

through seven based on a double jeopardy violation. Petition at 15. He argues

that knowingly participating in an intentional motor vehicle crash, as alleged

in counts one through seven, is a lesser-included offense of organized fraud, as

11

alleged in count fifteen, requiring reversal of his convictions on counts one through seven. Id. at 15-17.

Fundora-Martinez raised this claim as ground one of his Rule 3.850 Motion. Doc. 8-11 at 19-21. In denying relief, the postconviction court stated in pertinent part:

> Here, Defendant avers that knowingly participating in an intentional motor vehicle crash is a lesser-included offense of organized fraud. As such, Defendant contends that the elements of organized fraud wholly subsume the elements of knowingly participating in an intentional motor vehicle crash. Defendant believes that if Defense Counsel had based his motion for judgment of acquittal on this double jeopardy argument, the Court would have granted the motion.
>
> Defendant's argument fails on the merits because each offense contains at least one distinct element. See § 817.234(9), Fla. Stat. (setting forth the elements for knowingly participating in an intentional motor vehicle crash); § 817.034, Fla. Stat. (identifying the elements for organized fraud). And contrary to what Defendant asserts in his motion, knowingly participating in an intentional motor vehicle crash is not a lesser-included offense of organized fraud. See Fla. Std. Jury Instr. (Crim.) 20.19 (the lesser-included offenses of organized fraud are grand theft and petit theft); Cooks v. State, 249 So. 3d 774, 777 (Fla. 1st DCA 2018).
>
> Because there is no double jeopardy violation in this case, Defense Counsel did not provide ineffective assistance when he failed to challenge Defendant's

12

> convictions on double jeopardy grounds. <u>See</u> <u>Whitted</u>
> <u>v. State</u>, 992 So. 2d 352, 353 (Fla. 4th DCA 2008)
> ("Counsel was not ineffective for failing to file a motion
> sure to be denied."). Moreover, Defendant already
> raised his double jeopardy argument in his direct
> appeal. The First DCA affirmed Defendant's
> convictions and sentences.

<u>Id.</u> at 92 (record citations omitted). The First DCA per curiam affirmed the

denial of relief without a written opinion. Doc. 8-14.

To the extent that the First DCA decided the claim on the merits,[4] the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's adjudication

of this claim was not contrary to clearly established federal law, did not involve

an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Thus, Fundora-Martinez is not

entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is

not entitled to deference, Fundora-Martinez's ineffectiveness claim is without

---

[4] Throughout this Order, in looking through the appellate court's per curiam
affirmance to the circuit court's "relevant rationale," the Court presumes that the
appellate court "adopted the same reasoning." <u>Wilson</u>, 584 U.S. at 125-26.

merit. To prove the offense of knowingly participating in an intentional motor
vehicle crash, the State had to prove Fundora-Martinez "organized, planned or
knowingly participated in an intentional motor vehicle crash or a scheme to
create documentation of a motor vehicle crash that did not occur," and "[h]e did
so for the purpose of making a motor vehicle tort claim or claim for personal
injury [protection] benefit." Doc. 8-1 at 354; Doc. 8-3 at 670; Fla. Stat. §
817.234(9). To prove the offense of organized fraud, the State had to
demonstrate that Fundora-Martinez: (1) "engaged in a scheme to defraud,"
meaning "a systematic, ongoing course of conduct with intent to defraud one
or more persons, or with intent to obtain property from one or more persons by
false or fraudulent pretenses, representations, or promises or willful
misrepresentations of a future act"; and (2) thereby obtained property, i.e.,
"anything of value," either "temporarily or permanently." Doc. 8-1 at 355; Doc.
8-3 at 670-71; Fla. Stat. §§ 817.034(3)(b)-(c), (4)(a). Further, when the two
elements of organized fraud are satisfied, the jury must also determine the
aggregate value of the property obtained, which in this case was determined to
be over $50,000. Doc. 8-1 at 355; Doc. 8-3 at 672; Fla. Stat. § 817.034(4)(a)(1).

Fundora-Martinez does not seem to dispute that the two offenses are
separate, see Memorandum at 5; Reply at 5; see also Doc. 8-4, as he admits

14

that organized fraud requires additional elements, namely, that there is "a systematic, ongoing course of conduct with intent to defraud . . . or with intent to obtain property," and that property actually is obtained as a result of the scheme. Fla. Stat. § 817.034(4)(a); <u>Pizzo v. State</u>, 945 So. 2d 1203, 1207 (Fla. 2006) (citing <u>Cherry v. State</u>, 592 So. 2d 292, 295 (Fla. 2d DCA 1991)). As such, "separate convictions for these two offenses are authorized unless the offenses fit within one of the three exceptions in section 775.021(4)(b)." <u>Valdes v. State</u>, 3 So. 3d 1067, 1071 (Fla. 2009). Fundora-Martinez argues the third exception in section 775.021(4)(b) applies, specifically, that the offense of knowingly participating in an intentional motor vehicle crash is a lesser-included offense the statutory elements of which are subsumed by the offense of organized fraud.

However, as the postconviction court observed, knowingly participating in an intentional motor vehicle crash is not a lesser-included offense of organized fraud. <u>See</u> Fla. Std. Jury. Instr. (Crim.) 20.19 (Organized Fraud). The lesser-included offenses of organized fraud are grand theft and petit theft. <u>See</u> <u>id.</u>; <u>Pizzo</u>, 945 So. 2d at 1207 (finding that "grand theft is a lesser offense of organized fraud"); <u>Cooks</u>, 249 So. 3d at 777 ("Grand theft (both second and third degrees) and petit theft (both first and second degrees) are necessarily

15

lesser included offenses of scheme to defraud."); see also Doc. 8-3 at 673-76 (instructing the jury that "[t]he lesser crime[] indicated in the definition of organized fraud is theft" and listing the two elements of theft).[5]

Accordingly, counsel was not deficient for failing to move for judgment of acquittal based on the alleged double jeopardy violation. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument). However, assuming arguendo deficient performance by counsel, Fundora-Martinez has not shown any resulting prejudice. Even if the trial court would have vacated Fundora-Martinez's sentences on the second-degree felonies in counts one through seven,[6] there is no reasonable probability that his sentence on the first-degree

---

[5] In his Reply, Fundora-Martinez concedes that the lesser-included offenses of organized fraud are grand theft and petit theft, but argues, for the first time, that knowingly participating in an intentional motor vehicle crash is a lesser-included offense of grand theft. See Reply at 5-6. To the extent Fundora-Martinez attempts to raise new claims in his Reply, such claims are not properly before the Court. See Rule 2(c), Rules Governing Section 2254 Cases ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."); Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (collecting cases); see also Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (finding that a pro se litigant abandoned an issue that was not raised in his initial brief as the court does "not address arguments raised for the first time in a pro se litigant's reply brief"). In any event, Fundora-Martinez's argument seems to be misplaced because he was not convicted of grand theft.

[6] When double jeopardy challenges are successful, it appears the proper course is to vacate the sentence on the lesser-included offense. See Cooks, 249 So. 3d at 777

felony in count fifteen would have been more favorable. The first-degree felony conviction in count fifteen, which was based on a finding that Fundora-Martinez obtained property in the aggregate amount of $50,000 or more, is punishable by a term of imprisonment not exceeding thirty years as provided in Florida Statute section 775.082 and a fine not exceeding $10,000 as provided in section 775.083(1)(b). See Fla. Stat. § 817.034(4)(a)(1); Doc. 8-1 at 458-60, 470. Also, if the trial court would have proceeded to impose the original sentence as to count fifteen, it carried the same fifteen-year term of imprisonment as the concurrent sentences on counts one through seven. As such, Fundora-Martinez has not shown a reasonable probability that the outcome of the proceedings would have been more favorable to him. Having failed to show either deficient performance or resulting prejudice, his ineffectiveness claim fails. Therefore, Ground One is denied.

## B. Ground Two

In Ground Two, Fundora-Martinez contends his trial counsel was ineffective when he advised him "to reject two favorable plea offers by

---

(vacating the sentence on the scheme to defraud offense and remanding for preparation of a corrected scoresheet, entry of a corrected judgment, and resentencing); Cherry, 592 So. 2d at 295 (vacating the lesser offenses of grand theft and remanding for resentencing on the RICO, organized fraud, and three remaining grand theft convictions).

promising a win at trial." Petition at 18. Fundora-Martinez raised this claim as grounds four and five of his Rule 3.850 Motion. Doc. 8-11 at 27-31. In denying relief, the postconviction court stated as follows:

> In Ground Four, Defendant claims that Defense Counsel erroneously advised him to reject an alleged plea offer from the State that would have allowed Defendant to receive a ten-year term of probation rather than prison time. And in Ground Five, Defendant claims that Defense Counsel erroneously advised him to reject a plea offer from the State that would have allowed Defendant to receive a five-year prison sentence. The record conclusively refutes Defendant's claims.

> The first on-the-record discussion of plea negotiations occurred on July 29, 2016. At that time, both the State and the Defense agreed that no plea offer existed. At the final pre-trial conference, the Court conducted a thorough inquiry into the status and history of any plea offers in the case. The State acknowledged that it discussed the possibility of Defendant pleading guilty in exchange for a five-year prison sentence followed by a term of probation. The State indicated that the five-years-plus-probation discussions were not a formal offer because Defendant had rejected the State's previous formal offers.

> Defense Counsel stated that his client was not inclined to accept the five-years-plus-probation sentence. Defense Counsel reported that Defendant would agree to a two-year prison sentence (i.e., a sentence that would require no additional time in confinement because of Defendant's jail credit), but that the State had rejected that offer. Defense Counsel affirmed that he had discussed the applicable

18

sentencing guidelines with his client and that his client understood that each of the State's plea offers would allow him to serve fewer years in prison than what the guidelines provided. Defense Counsel expressed that Defendant did not want to plead guilty because Defendant "is a very firm believer in the justice system." Defendant had told Defense Counsel that he had not experienced the rights of the American judicial system – such as the right to a presumption of innocence and the right to make the State prove its case beyond a reasonable doubt – in his previous country and that he wanted to take advantage of those rights in this case. The Court expressly noted that it was possible the jury would ultimately find Defendant guilty at trial.

The Court conducted a sworn colloquy with Defendant. Defendant told the Court, "Thank you very much for the opportunity to take this case to trial. Thank you." Defendant confirmed that he had offered to plead guilty in exchange for a time-served sentence (followed by probation), but that the State had rejected his offer. In making this confirmation, Defendant again volunteered that he believed in the American judicial system. He expressed that he did not want to serve prison time because he desired to be with his family, which included two sick children. Defendant further acknowledged the State was willing to resolve his case for a five-year prison sentence (with Defendant receiving more than two years of jail credit) followed by a term of probation. Defendant agreed that, in the absence of a downward departure, the Court could not sentence him to fewer than fourteen years in prison if the jury found Defendant guilty at trial. After the sworn colloquy, the State informed the Court that it would not engage in any more plea negotiations and the parties agreed the case would proceed to trial.

19

Thus, the record shows the State was not amenable to any plea agreement that did not require Defendant to serve prison time (such as the probation-only sentence Defendant alleges in Ground Four). Furthermore, the record reflects that Defendant would not agree to any offer that required prison time (such as the five-year offer Defendant cites in Ground Five) because he believed in the American judicial system, maintained he was innocent of the charged offenses, and anticipated that he would prevail at trial. Defendant took this position after the Court apprised him of the potential consequences he faced if he took his case to trial and lost. The record shows Defendant's rejection of any offer that called for prison time beyond what his jail credit would cover was not born out of any misadvice from his lawyer, but was instead rooted in (1) his desire to avoid prison time and to remain with his family and (2) his innate confidence that, in light of his constitutional rights, he would prevail at trial.

Thus, the record conclusively refutes the allegations contained in Grounds Four and Five of Defendant's motion. See Bishop v. State, 219 So. 3d 83, 84 (Fla. 4th DCA 2017) (per curiam); Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013); Henry v. State, 920 So. 2d 1245, 1246 (Fla. 5th DCA 2006). As such, the Court denies Grounds Four and Five.

Id. at 95-97 (record citations omitted; other citations modified). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 8-14.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Fundora-Martinez is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Fundora-Martinez's ineffectiveness claim is without merit because the record refutes it. For example, at the February 3, 2016 pretrial conference,[7] when the trial court inquired about any offers made by the State, the State responded that "there was an offer of seven years, but it expired a while ago," and while there had been "some discussions about resolving" the case, the parties were "too far apart." Doc. 8-2 at 21-22. Further, in a July 21, 2016 letter sent to the trial judge, Fundora-Martinez stated he declined the State's offer of a four-year term of imprisonment "not thinking it [was] proper" and, instead, made a counteroffer of eighteen months, which the State declined. Doc. 8-1 at 240.

---

[7] It appears the postconviction court was actually referring to the February 3, 2016, pretrial conference when it mistakenly cited the date of July 29, 2016.

Then, at the July 19, 2017 final pretrial conference, after the trial court advised Fundora-Martinez that counts one through six each carried a sentencing range of two to fifteen years in prison and count fifteen was punishable by up to thirty years in prison, the following exchange took place:

THE COURT: Mr. Licandro, is there currently a State offer?

MR. LICANDRO: Your Honor, we had discussed last week about Mr. Fundora potentially pleading to five years followed by probation. That was what I explained to Mr. Goodwin was not a formal offer because . . . there had been several rejections of previous offers. But I basically said to Mr. Goodwin, if you could get Mr. Fundora to do five years followed by probation, the State would probably agree to that, which is less than what the guidelines are.
But that -- any reciprocation has never been communicated to me from Mr. Fundora.

THE COURT: But basically that's not actually a State offer, but it is an invitation to the defense to make that offer --

MR. LICANDRO: Right.

THE COURT: -- and you would certainly consider it.

MR. LICANDRO: Correct.

THE COURT: That has been discussed with your client?

22

MR. GOODWIN: Yes, Your Honor, I did discuss that with my client and he was disinclined to make that particular offer.

There was a previous defense offer tendered of two years followed by an indeterminate term of probation that we discussed, but that was not accepted by the State.

THE COURT: Okay.

MR. GOODWIN: Your Honor, I'm just double checking my math, but it looks like I calculated Mr. Fundora's guidelines to be 168 months in prison, which equates to exactly 14 years.

So the offer that has been conveyed to him or the one that I most recently said I would entertain was considerably less than what his guidelines called for. And all the other previous offers in this case, which he rejected, had been less as well.

. . . .

THE COURT: . . . . Sir, did you have a chance to meet with your client about what the guidelines are?

MR. GOODWIN: Yes, Your Honor.

I explained the guidelines. I told him that after trial should he be convicted on all counts, that the minimum sentence he would be looking at would be -- the minimum guidelines, 14 years.

I explained that to him. I also explained to him about the offer of the five years with some --

THE COURT: Or the invitation for the offer.

MR. GOODWIN: The invitation for the offer, yes, Your Honor. I explained that to him.

23

Mr. Martinez was very clear to me that he, much like many other people who have immigrated to the United States, is a very firm believer in the justice system, the judicial system of the United States. He understands that the State has the burden of proof and that he is not guilty until proven [guilty]. . . .

And presumed innocent until --

THE COURT: If and when a jury says otherwise, which might happen. It might not.

MR. GOODWIN: Exactly. And he has indicated that . . . he has not had the privilege of those rights in the past. He does have those rights now and wishes to exercise them.

THE COURT: Absolutely. . . .

So to the defendant, sir, do you understand that you have a constitutional right to a jury trial which is a right that is going to be protected in this courtroom? Do you understand that, sir?

THE DEFENDANT: Yes. Thank you very much for the opportunity to take this to trial. Thank you.

. . . .

THE COURT: Okay. So you understand, sir, what I heard from your lawyer is that you made the State an offer of two years followed by some probation, which the State rejected. You're aware of that, sir?

THE DEFENDANT: Yes. I believe in the system of the United States.

. . . .

24

THE COURT: . . . . So you made an offer of two years followed by probation that was rejected by the State, and you're aware of that, correct?

THE DEFENDANT: Yes. 28 months and some probation, which I will do because I have two sick children.

. . . .

MR. GOODWIN: Well, Your Honor, the offer was time served and I think he has got 28 months.

. . . .

THE COURT: If you increase that offer to five years with credit for the time you've served, which is currently . . . 2.3 years, in or about, . . . the State would accept that offer with some probation to follow and the case would be over with. Do you understand that?

THE DEFENDANT: Yes.
. . . . I would prefer to have a little more probation but being allowed to go home. I don't mind the probation, but I would be with my family. That is what I wish.

. . . .

MR. LICANDRO: Your Honor, just based on Mr. Martinez's rejection of the State's latest efforts to resolve this case, the State will no longer be negotiating with Mr. Fundora-Martinez at all and his only option at that point would be to plead to the Court or just go to trial.

Doc. 8-1 at 471-77, 482-83.

25

Based on the foregoing, Fundora-Martinez has failed to carry his burden of showing that it was counsel's deficient performance that caused him to reject the State's plea offers. Indeed, the record demonstrates that counsel fulfilled his responsibility to provide his client with the information necessary to make an informed decision and it was Fundora-Martinez's ultimate, conscious decision to proceed to trial. See Missouri v. Frye, 566 U.S. 134, 145 (2012) (holding that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"); Jones v. Barnes, 463 U.S. 745, 751 (1983) (recognizing that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal").[8] Therefore, Ground Two is denied.

---

[8] The Court notes that Fundora-Martinez was represented by several different attorneys during the pretrial and trial proceedings, as follows: (1) William L. Roelke, Jr., between March 8, 2015 and February 3, 2016; (2) Belkis Plata between February 17, 2016 and July 29, 2016; (3) Octavius A. Holliday, Jr. between August 1, 2016 and December 30, 2016; and (4) C. Darold Goodwin from December 30, 2016 through the sentencing. See Doc. 8-1 at 64, 176-78, 201, 247, 249, 314-16; Doc. 8-2 at 22, 40, 48-49. While Fundora-Martinez argues that attorney Holliday's advice "to reject the two State plea offers was patently unreasonable," Petition at 19, there is no record of such offers made by the State during attorney Holliday's representation. However, even assuming these plea offers existed, there is no reasonable probability that Fundora-Martinez would have accepted them, considering his desire to avoid prison time (whereas at least one of the alleged plea offers included a five-year term of

### C. Ground Three

In Ground Three, Fundora-Martinez alleges his trial counsel was ineffective "for failing to investigate and call exculpatory witness Alex Garcia at trial." Petition at 23. He raised this claim as ground three of his Rule 3.850 Motion. Doc. 8-11 at 24-27. In denying relief, the postconviction court stated in pertinent part:

> At the close of the State's case, the Court conducted a sworn colloquy with Defendant. During that colloquy, Defendant swore there were no additional witnesses he wished to call or additional evidence he wished to present. It is impossible to reconcile the allegations Defendant makes in Ground Three of his motion with the sworn assertions he made to the Court. And Defendant may not obtain postconviction relief through contradicting his sworn statements to the Court. See Kelley, 109 So. 3d at 812-13 ("A rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations."); Henry, 920 So. 2d at 1246 ("Defendants are bound by the statements made by them under oath . . . ."). Accordingly, the Court denies Ground Three of Defendant's motion.

Id. at 94 (record citations omitted; other citations modified). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 8-14.

---

imprisonment), his prior rejection of an alleged four-year-imprisonment offer, and his unmistakable desire to proceed to trial.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Fundora-Martinez is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Fundora-Martinez's ineffectiveness claim is without merit. First, as the postconviction court found, Fundora-Martinez's claim cannot be reconciled with his sworn assertions to the trial court at the close of the State's case. See Doc. 8-3 at 597 (stating that the defense did not intend to call any witnesses), 600-01 (indicating during the sworn colloquy that Fundora-Martinez declined to call any witnesses or present any evidence). Additionally, there is no reason to believe that Garcia would have provided exculpatory information had counsel called him to testify on behalf of the defense. Garcia was the former manager of One Touch Therapy Center, one of

28

the clinics that closed after the investigation began, and he was prosecuted for similar charges as Fundora-Martinez. See id. at 231, 591, 641 ("Alex Garcia . . . has a history of staging these car accidents, and . . . a history of going out and recruiting people."). In fact, in his October 17, 2013 interview with Detective Murphy, Garcia seemingly implicated Fundora-Martinez in the fraudulent activity. See Doc. 8-1 at 127 ("Garcia believes that Fundora[-Martinez] brought [Harold Pompey, D.C.] to [One Touch Therapy Center]. Sandy Morales gave money to Garcia to pay Fundora[-Martinez] for bringing patients to the clinics."). Because Fundora-Martinez has not demonstrated that counsel was deficient for failing to call Garcia as a defense witness at the trial or that any deficient performance in this regard resulted in prejudice under Strickland, he is not entitled to federal habeas relief on the claim in Ground Three.

### D. Ground Four

In Ground Four, Fundora-Martinez contends his trial counsel was ineffective when he advised him not to testify in his own defense at trial. Petition at 27. Fundora-Martinez argues "his own testimony was the only evidence that could be presented to the jury to offset the testimony of his co-defendants," who were allegedly coerced into naming him and others as recruiters in exchange for advantageous plea deals in their own cases. Id.

29

Fundora-Martinez contends that the jury needed to hear that although he "knew the State witnesses from the neighborhood and was aware of their participation in the insurance fraud scheme, [he] did not participate in the scheme despite their requests [to] do so." Id.

Fundora-Martinez raised this claim as ground six of his Rule 3.850 Motion. Doc. 8-11 at 31-34. In denying relief, the postconviction court stated in pertinent part:

> At the close of evidence, the Court conducted a sworn colloquy with Defendant. During that colloquy, the Court informed Defendant that he had an absolute right to testify in his own defense if he wanted to do so. Defendant acknowledged his understanding of this right. The Court informed Defendant that the decision of whether to testify was ultimately Defendant's alone. See Jones, 463 U.S. at 751 ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal . . . ."). Defendant twice informed the Court that he decided against testifying.
>
> To accept the allegations contained in Ground Six of Defendant's motion would be to ignore Defendant's sworn statements to the Court. Defendant may not obtain postconviction relief in that manner. See Kelley, 109 So. 3d at 812-13; Henry, 920 So. 2d at 1246. Moreover, in light of the evidence adduced at trial, there is no reasonable probability the result of Defendant's case would have changed if only he had testified at trial. For these reasons, the Court denies Ground Six of Defendant's motion.

<u>Id.</u> at 97-98 (record citations omitted; other citations modified). The First DCA

per curiam affirmed the denial of relief without a written opinion. Doc. 8-14.

To the extent that the First DCA decided the claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's adjudication

of this claim was not contrary to clearly established federal law, did not involve

an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Thus, Fundora-Martinez is not

entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is

not entitled to deference, Fundora-Martinez's ineffectiveness claim is without

merit, because it cannot be reconciled with his sworn assertions to the trial

court:

> THE COURT: . . . . As you know Mr. Fundora-
> Martinez, you have the constitutional right to remain
> silent, that is not to testify as a witness in this case. . .
> . .
> I must also advise you that you have a
> constitutional right to testify. It is your right to testify

31

or not testify, and no one can make that decision except for you.

Mr. Goodwin, have you been in discussions with your client about this issue of whether or not to testify?

MR. GOODWIN: Yes, I have, Your Honor.

THE COURT: And so, Mr. Fundora-Martinez, I understand you have communicated with your attorney, Mr. Goodwin, about this issue. . . . And have you made a decision as to whether or not you're going to testify?

THE INTERPRETER: Yes.

THE COURT: Are you ready to tell me in open court of your decision?

THE INTERPRETER: No, no, no, I'm not going to testify.

. . . .

THE COURT: Is there any other evidence that you would like your lawyer to introduce?

THE INTERPRETER: No.

THE COURT: And you have decided not to testify; is that correct?

THE INTERPRETER: Yes.

Doc. 8-3 at 598-601.

Based on the foregoing, Fundora-Martinez has not demonstrated that counsel was deficient for advising him not to testify at trial. Even assuming

32

arguendo deficient performance by counsel, Fundora-Martinez has not demonstrated a reasonable probability that the result of the proceedings would have been different if he had presented the jury with his own self-serving testimony, particularly given the wealth of incriminating evidence from the nineteen State witnesses who testified at the trial. See generally Doc. 8-3 at 222-462, 497-591. Thus, in the absence of a showing of deficient performance and resulting prejudice, Fundora-Martinez is not entitled to federal habeas relief on the claim in Ground Four.

### E. Ground Five

In Ground Five, Fundora-Martinez alleges that the cumulative effect of his trial counsel's errors was so serious as to deprive him of a fair trial. Petition at 31. He raised this claim as ground eight of his Rule 3.850 Motion. Doc. 8-11 at 37-39. In denying relief, the postconviction court stated as follows:

> In Ground Eight, Defendant makes a claim of cumulative error. "Claims of cumulative error do not warrant relief where each individual claim of error is either 'meritless, procedurally barred, or [does] not meet the Strickland standard for ineffective assistance of counsel.'" Schoenwetter v. State, 46 So. 3d 535, 562 (Fla. 2010) (quoting Israel v. State, 985 So. 2d 510, 520 (Fla. 2008)). Because all of Defendant's claims are meritless and do not meet the Strickland standard for ineffective assistance of counsel, Defendant's claim of cumulative error does not warrant relief. Accordingly, the Court denies Ground Eight of Defendant's motion.

Id. at 100-01. The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 8-14.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Fundora-Martinez is not entitled to relief on the basis of this claim.

However, even if the appellate court's adjudication of the claim is not entitled to deference, this claim must still be denied for the reasons that follow. As the United States Supreme Court has not yet held that distinct constitutional claims can be cumulated to grant habeas relief, the judgment of the state court cannot contravene § 2254(d). See, e.g., Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam) ("Because our cases give no clear answer to the question presented . . . , 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law."). Moreover, even if

34

the claim of cumulative error is cognizable for federal habeas review, it would still be denied. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 n.3 (11th Cir. 2012). Because each of Fundora-Martinez's claims lack merit, his claim of cumulative error fails. Therefore, Fundora-Martinez is not entitled to federal habeas relief on the claim in Ground Five.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Fundora-Martinez seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Fundora-Martinez "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Fundora-Martinez appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the

36

pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of February, 2025.

**MARCIA MORALES HOWARD**
Chief United States District Judge

Jax-11 2/19
C:    Reinier Fundora-Martinez, #J60209
       Counsel of record

37